# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

IMMANUEL DUBOSE,               Case No. 1:10-cv-428
     Petitioner,

                                   Beckwith, J.
     vs.                           Bowman, M.J.

WARDEN, LEBANON          **REPORT AND**
CORRECTIONAL INSTITUTION,   **RECOMMENDATION**
     Respondent.

Petitioner, an inmate in state custody at the Lebanon Correctional Institution, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter is before the Court on the petition and respondent's return of writ. (Docs. 1, 5).

## I.    FACTUAL BACKGROUND

The Ohio Court of Appeals, First Appellate District, provided the following summary of the facts that led to petitioner's conviction and sentence:[1]

> [*P2] On July 20, 2006, a shootout between Azizuddin Sanders and others resulted in the death of Sanders. Sanders was killed in the Walnut Hills area of Cincinnati.
>
> [*P3] Carin Allen was at the scene of the shooting and was injured by gunfire. She knew Dubose because she had gone to high school with him. At trial, she testified that Dubose was at the scene of the shooting, but would not say that she had seen him participate in the shootout.
>
> [*P4] Antonio McBride also testified at trial. He was a co-defendant who reached a plea agreement with the state, in this and other cases, in exchange for his testimony. He testified that he went to a party on the night of the shooting. Dubose and Qaid Salaam, another co-defendant, were also there. According to McBride, the three men decided to find Dubose's usual drug supplier and rob him. He said that he knew that both Salaam and Dubose were armed. He said that the three of them left the party to buy drugs.

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."

[*P5] The three men drove to Walnut Hills, but could not find Dubose's usual drug supplier. The group came upon another group of men that included Sanders. According to McBride, Salaam had words with Sanders. When Sanders became "disrespectful," Salaam drew his weapon and pointed it at Sanders. Sanders raised his hands, but then ran into the street. Salaam began shooting at him. McBride said that he dove for cover and that he saw Dubose also begin shooting at Sanders. Sanders drew his own weapon and began shooting at Salaam and Dubose. Sanders was shot and died later at the hospital.

[*P6] A witness at the scene identified a car that was seen leaving the location of the shooting. The investigation later indicated that it was a car that was often borrowed by, among others, Dubose. Telephone records were admitted to connect the witness to Dubose on the night before and the night of the shooting. The owner of the vehicle remembered lending the car to Dubose around the time of the shooting.

[*P7] Detective Keith Witherell testified that he was the lead detective in the case. He interviewed Allen on the night of the shooting, but she was only able to give a general description of the shooters. Cincinnati Police received five tips from the Crime-stoppers hotline, but determined that only one of them was credible. That call linked Dubose to the shooting. Allen was later shown a photo array that included Dubose's photograph, but she denied recognizing anyone.

[*P8] Witherell stated that he later received a call from the victim's family, during which he was told that Allen had told them that she had recognized Dubose and that she was afraid to say anything because she lived and worked near the scene of the shooting. Witherell went to Allen's home and told her about the call he had received. According to his testimony, she admitted that she had initially lied about not recognizing Dubose because of her fear of retaliation.

[*P9] Dubose was interviewed by police. Initially he agreed to speak to them and asked them if he could avoid prison time if he was a witness. After a brief period, he invoked his right to counsel and questioning ceased.

[*P10] Only Sanders's gun was found at the scene, but analysis indicated that three separate guns were involved in the shootout. No physical evidence was found linking either Dubose or Salaam to the shooting.

(Doc. 7, Ex. 15, pp. 2-4).

## II.    PROCEDURAL HISTORY

### State Trial and Appellate Proceedings

On October 13, 2006, the Hamilton County, Ohio Grand Jury returned an indictment charging petitioner with two counts of murder, in violation of Ohio Rev. Code §§ 2903.02(A) and (B), and one count each of aggravated murder, aggravated robbery, robbery, and having weapons while under disability.  (Doc. 7, Ex. 1, p. 2).  All counts of the indictment except the weapons under disability count included firearm specifications.  *Id.*

Prior to trial, petitioner filed a motion to suppress identification testimony against him (Doc. 7, Ex. 2), and a motion to suppress custodial statements made by petitioner, which he argued were taken in violation of his constitutional rights.  (Doc. 7, Ex. 3).  The trial court overruled both motions.  (Doc. 7, Ex. 5 & 6).

On May 3, 2007, petitioner was found guilty of murder under Ohio Rev. Code § 2903.02(B), with specifications, and of having weapons under disability under Ohio Rev. Code § 2923.13(A)(3).  (Doc. 7, Ex. 7).  A judgment of acquittal was entered with regard to the remainder of the charges.  (Doc. 7, Ex. 8).  On May 18, 2007, petitioner was sentenced to fifteen years to life for the murder conviction; three years for the specifications; and five years for the weapons under disability conviction.  (Doc. 7, Ex. 9).

On June 1, 2007, through new counsel, petitioner filed a timely appeal to the Ohio Court of Appeals, setting forth the following assignments of error:

1.    The trial court erred to the prejudice of Defendant-Appellant by allowing the State to introduce a taped statement as rebuttal evidence.

2.    The trial court erred to the prejudice of the Defendant-Appellant by disallowing evidence of the Crime Stoppers' tips.

3.      The trial court erred to the prejudice of the Defendant-Appellant by allowing the State to impeach its own witness with her prior, unsworn out of court statement.

4.      The jury erred to the prejudice of the Defendant-Appellant by finding him guilty of murder and weapons under disability, as those findings were not supported by sufficient evidence.

5.      The jury erred to the prejudice of the Defendant-Appellant by finding him guilty of murder and weapons under disability, as those findings were contrary to law.

6.      The trial court erred to the prejudice of the Defendant-Appellant by overruling his motion for acquittal under Ohio Criminal Procedure, Rule 29.

7.      The trial court erred to the prejudice of Defendant-Appellant by not granting his motion to suppress his identification.

8.      The trial court erred to the prejudice of Defendant-Appellant by not granting his motion to suppress his statement.

9.      The trial court erred to the prejudice of Defendant-Appellant by overruling his motion for a separate trial.

10.     The trial court erred to the prejudice of Defendant-Appellant by imposing a sentence that is contrary to law.

(Doc. 7, Ex. 11). On June 5, 2008, petitioner filed an amended brief asserting an additional assignment of error:

11.     Defendant-Appellant was prejudiced by the structural defect in his indictment.

(Doc. 7, Ex. 13, pp. 15-16). On September 30, 2008, the Ohio Court of Appeals overruled the assignments of error and affirmed the judgment of the trial court. (Doc. 7, Ex. 15).

**Ohio Supreme Court**

On October 23, 2008, petitioner, through counsel, filed a timely notice of appeal to the Ohio Supreme Court. (Doc. 7, Ex. 16). In his memorandum in support of jurisdiction, petitioner asserted the following propositions of law:

I.    The trial court erred to the prejudice of the Appellant by finding him guilty of murder and weapons under disability, as those findings were not supported by sufficient evidence, and the State failed to meet its burden of proof.

II.   The trial court erred to the prejudice of the Appellant by finding him guilty of murder and weapons under disability, as those findings were contrary to law, and were against the manifest weight of the evidence.

III.  The trial court erred to the prejudice of the Appellant by overruling his motion for acquittal under Ohio Criminal Procedure Rule 29, as the State failed to meet its burden of proving that Appellant was guilty of murder and weapons under disability.

IV.   The trial court erred to the prejudice of Appellant by imposing a sentence that is contrary to law because it was excessive.

V.    Appellant was prejudiced by the structural defect in his indictment, where the indictment omits the *mens rea*, a necessary element of the offenses.

VI.   The trial court erred to the prejudice of Appellant by allowing the State to introduce a taped statement as rebuttal evidence.

VII.  The trial court erred to the prejudice of the Appellant by disallowing evidence of the Crime Stoppers' tips, as the tips were exculpatory.

VIII. The trial court erred to the prejudice of the Appellant by allowing the State to impeach its own witness with her prior, unsworn, out-of-court statement.

IX.   The trial court erred to the prejudice of Appellant by not granting his motion to suppress his identification.

X.    The trial court erred to the prejudice of Appellant by not granting his motion to suppress his statement.

XI.   The trial court erred to the prejudice of Appellant by overruling his motion for a separate trial.

(Doc. 7, Ex. 17). On February 4, 2009, the Ohio Supreme Court declined jurisdiction and dismissed the appeal "as not involving any substantial constitutional question." (Doc. 7, Ex. 19).

**Petition to Vacate**

During the pendency of his direct appeal, petitioner filed a pro se petition to vacate or set aside his judgment of conviction and sentence. (Doc. 7, Ex. 20). Therein, petitioner asserted the ineffective assistance of counsel at trial as his sole ground for relief. *Id.* On March 26, 2008, the Hamilton County Court of Common Pleas denied petitioner's post-conviction petition. (Doc. 7, Ex. 23).

On April 15, 2008, petitioner filed a pro se notice of appeal to the Ohio Court of Appeals. (Doc. 7, Ex. 24). In his merit brief, petitioner asserted the following assignments of error:

1. The trial court erred as a matter of law in concluding that appellant's ineffective counsel issue is res judicata, depriving Appellant of due process of law. [Entry, 3/26/08].

2. The trial court erred and abused its discretion in denying relief without first conducting an evidentiary hearing. [Entry 2/26/08].

3. Trial Counsel's unreasonable failure to conduct reasonable investigations deprived Appellant of the effective assistance of counsel and the trial court erred in failing to grant relief. [Entry, 3/26/08].

(Doc. 7, Ex. 25). On November 26, 2008, the Ohio appellate court overruled the assignments of error and affirmed the judgment of the trial court. (Doc. 7, Ex. 27).

**Application to Reopen Appeal**

On December 22, 2008, petitioner filed a pro se application to reopen his appeal. (Doc. 7, Ex. 28). In support of his application, petitioner argued that his trial and appellate counsel were ineffective for failing to "recognize, argue and brief the strongest errors revealed by the trial court record including the fact that the Ohio Revised Code § 2903.02[B] as applied to Appellant violates the Equal Protection Clause of the Ohio Constitution as well as the Due Process Clause of the United States Constitution." *Id.* at 1. Petitioner further argued that "deficient performance is evidence (sic) where Appellant was convicted of Murder in violation

of the Double Inference Rule and the Due Process Clause of the Ohio and United States

Constitution." *Id.* On March 17, 2009, the Ohio Court of Appeals overruled petitioner's motion

to reopen. (Doc. 7, Ex. 30).

On April 29, 2009, petitioner filed a pro se notice of appeal to the Ohio Supreme Court.

(Doc. 7, Ex. 31). In his memorandum in support of jurisdiction, petitioner raised the following

propositions of law:

1. BECAUSE OF THE INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL THE APPELLANT WAS DEPRIVED OF HIS EQUAL PROTECTION RIGHTS UNDER THE OHIO CONSTITUTION AND HIS DUE PROCESS RIGHTS UNDER THE UNITED STATES CONSTITUTION WHEN HE WAS CONVICTED AND SENTENCED FOR MURDER PER OHIO REVISED CODE §2903.02[B].

2. BECAUSE OF THE INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL APPELLANT'S CONVICTION AND SENTENCE FOR MURDER WAS SECURED IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE OHIO AND U.S. CONSTITUTION WHERE THE VERDICT IS BASED UPON AN INFERENCE.

3. DEFENDANT-APPELLANT IS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL WHERE THESE ATTORNEYS FAILED TO ARGUE, BRIEF AND RECOGNIZE THE FOREGOING DEAD BANG WINNER PROPOSITIONS OF LAW.

(Doc. 7, Ex. 32). On July 21, 2009, the Ohio Supreme Court dismissed the appeal "as

not involving any substantial constitutional question." (Doc. 7, Ex. 33).

**Federal Habeas Corpus**

Petitioner filed the instant habeas corpus petition on June 29, 2010. (Doc. 1). The

petition sets forth four grounds for relief:

<u>**GROUND ONE:**</u>
STATE COURT CONVICTION FOR MURDER OBTAINED IN VIOLATION OF DUE PROCESS CLAUSE OF FOURTEENTH AMENDMENT, U.S. CONSTITUTION.

**Supporting Facts**: Where Petitioner's conviction for felony murder is contrary to both the murder statute and common-law of Ohio then his absolute right to procedural due process of law as guaranteed under the 14th Amendment to U.S. Constitution is violated.

**GROUND TWO**:
PETITIONER'S CONVICTION FOR MURDER OBTAINED IN VIOLATION OF FOURTEENTH AMENDMENT- U.S. CONSTITUTION.

**Supporting Facts**: Evidence adduced by State was insufficient to support conviction for felony-murder.

**GROUND THREE**:
PETITIONER WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL ON HIS APPEAL AS OF RIGHT.

**Supporting Facts**: Petitioner's 6th and 14th Amendment rights to effective assistance of counsel on appeal is vitiated where counsel fails to litigate the fact that the murder statute Petitioner was convicted under is unconstitutional as denying him Equal Protection under the State constitution & Due Process under federal Constitution.

**GROUND FOUR**:
DENIAL OF SIXTH AMENDMENT RIGHT TO ASSISTANCE OF APPELLATE COUNSEL ON DIRECT APPEAL.

**Supporting Facts**: Appellate counsel was constitutionally ineffective where he failed to recognize, argue and brief the fact that petitioner's conviction and sentence for murder is violative of the 14th Amendment to the U.S. Constitution and the Double Inference Rule which actually relieved the State of Ohio of its's (sic) burden of proof [constitutional structural defect error].

*Id.*

## III. THE PETITION SHOULD BE DENIED BECAUSE PETITIONER'S GROUNDS FOR RELIEF ARE PROCEDURALLY DEFAULTED OR WITHOUT MERIT.

In this federal habeas case, the applicable standard of review for addressing the merits of

petitioner's due process claim is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of

habeas corpus may not issue unless the state courts' adjudication either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* __ F.3d __, No. 08-3247, 2011 WL 3524301, at *4 (6th Cir. Aug. 12, 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* As the Sixth Circuit recently explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398 . . . (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784 . . . (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 . . . (2002) (per curiam).

*Id.* (emphasis in original).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves

authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

In determining whether or not relief should be granted on a constitutional claim that was adjudicated by the state courts, the "federal habeas court reviewing the state-court judgment must apply the law that controlled 'at the time his state-court conviction became final.'" *Miller v. Stovall,* 608 F.3d 913, 919 (6th Cir. 2010) (quoting *Williams,* 529 U.S. at 390), *petition for cert. filed,* 79 U.S.L.W. 3404 (U.S. Dec. 21, 2010) (No. 10-851); *see also Otte, supra,* 2011 WL 3524301, at *4 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte, supra,* 2011 WL 3524301, at *4 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *petition for cert. filed,* __ U.S.L.W. __ (U.S. Apr. 4, 2011) (No. 10-9911)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

**A. Petitioner is not entitled to relief based on Ground Two of the petition because it is without merit.**

In Ground Two, petitioner contends that there was insufficient evidence to support his conviction for murder under Ohio Rev. Code § 2903.02(B). (Doc. 1, p. 6). Petitioner has argued that his conviction was not supported by any physical evidence that petitioner was at the scene of the shooting; that Ms. Allen's testimony did not prove that petitioner was present during the shooting; and that McBride was not credible because he was a co-defendant who "brokered a deal for a 15-year flat prison term" and his testimony was "fraught with inconsistencies." (Doc. 7, Ex. 11, pp. 9-10; Ex. 13, pp. 9-10; Ex. 17, pp. 5-6).

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship,* 397 U.S. 358, 364 (1970). In analyzing claims of insufficient evidence, the Court must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). This standard reserves to the trier of fact the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Id.* at 318-319.

On habeas corpus review, the Court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Id*. at 189-99. In addition, circumstantial evidence may be sufficient to support a

conviction and such evidence need not remove every reasonable hypothesis except that of guilt.

See *Jackson*, 443 U.S. at 326; *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995); *Jamison v. Collins*, 100 F. Supp.2d 647, 705 (S.D. Ohio 2000), *aff'd*, 291 F.3d 380 (6th Cir. 2002).

Therefore, the question for this Court is whether the Ohio Court of Appeals' application of the "no rational trier of fact" test, as articulated in *Jackson* and adopted as a matter of Ohio law in *State v. Jenks*, 574 N.E.2d 492 (Ohio 1991), was contrary to or an unreasonable application of that test to the facts of this case.

In the instant case the Ohio Court of Appeals found that sufficient evidence was provided for the trial court to have found petitioner guilty beyond a reasonable doubt:

{¶ 75} In his fourth assignment of error, Dubose claims that his conviction was based upon insufficient evidence. In his fifth assignment of error, he claims that the conviction was against the manifest weight of the evidence. In his sixth assignment of error, he argues that the trial court improperly denied his Crim.R. 29 motion for an acquittal. All three assignments are without merit.

{¶ 76} In a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. The standard of review for the denial of a Crim.R. 29(A) motion to acquit is the same. In a challenge to the weight of the evidence, we must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.

{¶ 77} The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of fact to resolve. "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness."

{¶ 78} "It is the State's burden at trial to prove the criminal charge or charges alleged beyond a reasonable doubt. However, when a convicted defendant argues on appeal that his conviction is against the manifest weight of the evidence, the defendant bears the burden of that proposition. He must show that his conviction

is contrary to the weight of the evidence offered, not merely that the probative value of the evidence offered by both sides is in equipoise. In that circumstance, this court will not substitute its judgment for that of the trier of facts on issues such as witness credibility, unless it is patently apparent that the trier of facts lost its way in arriving at its verdict."

{¶ 79} In this case, while Allen refused to testify that Dubose was involved in the shooting, she did testify that he was at the scene when the shooting occurred. McBride testified about the plan that he, Dubose, and Salaam had concocted and about how the encounter proceeded. His version of events matched the physical evidence found at the crime scene. The jury was fully informed of McBride's plea agreement with the state and was instructed about the problems that might be inherent in the testimony of a co-conspirator.

{¶ 80} A rational trier of fact could have found all the essential elements of the crimes beyond a reasonable doubt, and the jury did not lose its way by doing so in this case.

(Doc. 7, Ex. 15, pp. 20-22) (footnotes omitted).

After review of the entire record, the Court finds that petitioner has not demonstrated that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of federal law. Although the Ohio Court of Appeals cited only state cases, the court correctly indentified and applied the clearly-established standard of review enunciated by the Supreme Court in *Jackson* in assessing petitioner's claims and reasonably determined that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

Under Ohio Rev. Code § 2903.02(B), "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." To establish the charged murder offense with the firearm specifications, the state was required to prove beyond a reasonable doubt that petitioner caused the death of Sanders "as a proximate result of committing or attempting to commit" a felonious

assault offense, and that petitioner had "on or about his person, or under his control, a firearm while committing the offense of Murder and displayed the firearm, brandished the firearm, indicated that he possessed a firearm or used it to facilitate the offense." (*See* Doc. 7, Ex. 1, p. 4).

Under Ohio law, a person is guilty of a felonious assault if he "knowingly" either (1) causes serious physical harm to another, or (2) causes or attempts to cause physical harm to another "by means of a deadly weapon." Ohio Rev. Code § 2903.11(A). A person acts "knowingly" when, regardless of purpose, "he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." Ohio Rev. Code § 2903.22(B). In order to establish the specific offense of causing or attempting to cause physical harm to another "by means of a deadly weapon," the state must demonstrate that "the defendant knowingly engaged in some overt act directed toward executing or accomplishing the assault through the use of a deadly weapon." *Nash v. Eberlin*, 258 F. App'x 761, 766 (6th Cir. 2007) (citing *State v. Kline*, 464 N.E.2d 159, 166 (Ohio Ct. App. 1983)).

At trial, the defense did not contest whether Mr. Sanders was shot and killed during the incident but instead argued that the evidence was not sufficient to demonstrate who had shot him and that a reasonable doubt existed as to whether the shooter was actually McBride.[2] (*See e.g.* Doc. 7, Tr. 287-88, 297-98, 1162, 1172-73). However, upon review of the entire record, the Court finds that the evidence offered against petitioner to be constitutionally sufficient to sustain his murder conviction.

---

[2] In closing, defense counsel argued as follows:

> Based on the evidence that you have before you, basically Carin Allen saying I recognize him, [McBride] saying, yes, he was there, he had a Mac 11, none of the physical evidence links Mr. Dubose. That's what the State proved. State proved Mr. Dean Sanders was killed that night by gunfire, by someone, and maybe it was Mr. Dubose. Maybe it was Mr. McBride. Maybe it was Mr. Salaam. That's not enough.

As the state appellate court correctly observed, though witness Allen was reluctant to testify against petitioner, she did indicate that he was present at the time of the incident.[3] *Id.* at 367-68, 381-82. Allen testified that she witnessed three black males approach Mr. Sanders, *id.* at 334; that someone said something like "don't move," *id.* at 365-66, 370, 376, 381-82; that she witnessed the individuals reaching for Mr. Sander's pockets, *id.* at 381; that everyone there had guns, *id.* at 362; that she observed one larger gun but didn't recall who was in possession of it, *id.* at 362-63, 377; and that multiple shots were fired, though she did not see who did the shooting. *Id.* at 337, 471-72. Detective Witherell later testified that Allen identified petitioner in a photo lineup, *id.* at 827, 833-34, 914; that he was clear about asking for an identification based on the night of the shooting, *id.* at 828; and that Ms. Allen was scared to identify petitioner. *Id.* at 834.

McBride testified that he, petitioner, and Salaam attended a party prior to the incident. *Id.* at 658. He stated that they left the party so that petitioner could buy drugs from his supplier, that petitioner and Salaam were armed when leaving the party, and that petitioner mentioned that he might rob his supplier, but that it was not brought up seriously. *Id.* at 662, 663, 667. He

---

(Doc. 7, Tr. 1172-73).

[3] Ms. Allen indicated that she did not want to be part of the case in any manner and that petitioner knew her, though she stated she was not scared to testify and had not been threatened by anyone. (*See* Doc. 7, Tr. 385-87). Throughout the majority of her testimony she maintained that she identified petitioner in a photo line-up because she recognized him from high school. However, Ms. Allen did eventually indicate that she told the investigating officers that he was involved in the robbery:

    Q:    And you said you identified him because he was involved in this robbery?

    A:    I identified him because I recognized him.

    Q:    Because he was involved in the robbery on July 20th of 2006; isn't that true?

    A:    That's what I told the officers.

(Doc. 7, Tr. 367-68); (*see also id*. at 388) (indicating that recognizing him from high school was "part of the reason" she told officers that she identified him).

testified that petitioner was armed with a Mac 11 and that Salaam had a 9mm. *Id.* at 664.
McBride stated that they left the party in a grey Infinity owned by a drug addict named Don. *Id.*
at 665. Don Brown, who McBride was referring to, confirmed that petitioner had borrowed the
car from him. *Id.* at 309.

McBride testified that they unsuccessfully attempted to locate petitioner's supplier in
front of the Walnut Hills projects, the location of the shooting. *See id.* at 668-69. He stated that
he, petitioner and Salaam parked the car and walked to the front of the buildings, where they
asked "a couple guys" if they knew where the supplier was. *Id.* According to McBride, one of
the individuals, Mr. Sanders, "kind of got like a little smart mouth" with Salaam and Salaam
drew his gun on him. *Id.* at 669-70. McBride testified that Sanders initially put his hands in the
air and eventually ran from Salaam into the middle of the street, drew a gun from a holster, and
began to fire a gun towards them. *Id.* at 670-71. According to McBride, Salaam was the first to
fire, but he testified that he personally witnessed petitioner grab a Mac 11 from his belt buckle
and start shooting.[4] *Id.* at 673-74.

Mr. William Schrand, senior firearms examiner with the Hamilton County Coroner's
Crime Laboratory, testified that there was evidence of at least three guns being involved in the
shooting. *Id.* at 613. Schrand testified that the evidence suggested that two 9mms were used
during the shootout. *Id.* at 612-13. Furthermore, he indicated that rectangular firing impressions
found on additional ammunition at the crime scene was consistent with a limited number of
firearms, including a SWD semiautomatic pistol, which he indicated is "basically a very boxy
rectangular looking semiautomatic pistol" commonly mistaken for an Uzi and "is a somewhat
large gun." *Id.* at 605-06. *See also id.* at 624-25. The prosecution argued that Schrand's

---

[4] Ms. Amber Captain also testified that she witnessed a silver car shaped like an Acura speed down the street five
minutes after hearing gunshots. *Id.* at 396, 400-01.

testimony was consistent with a Mac 11.[5] *Id.* at 1135.

When viewing all of the evidence in the light most favorable to the prosecution, and for the reasons stated by the state appellate court, this Court concludes that the evidence was constitutionally sufficient to sustain petitioner's conviction. The Ohio Court of Appeals was not unreasonable in finding that a rational trier of fact could find beyond a reasonable doubt that petitioner knowingly caused or attempted to cause physical harm to Mr. Sanders by means of a deadly weapon and that Mr. Sanders death was a proximate result of committing or attempting to commit the felonious assault.

Accordingly, the undersigned concludes that petitioner is not entitled to relief based on the claim raised in Grounds Two of the petition challenging the sufficiency of the evidence supporting his murder conviction. The Ohio Court of Appeals' adjudication of the sufficiency-of-evidence claim alleged in Ground Two involved a reasonable application of the *Jackson* standard and was based on a reasonable determination of the facts in light of the evidence presented at trial.

**B. Petitioner is not entitled to relief based on the claims asserted in Grounds One and Four because petitioner procedurally defaulted Ground One and Ground Four is without merit.**

In Ground One, petitioner contends that his conviction for murder was obtained in

---

[5]  During closing, the prosecution argued as follows:

> Well, Schrand identifies 9FC, 9mm Lugar cartridge cases that can come from a Mac 11, essentially, M-11, 9, C/M11/9 is what you are going to see on the firearms report. Ultimate conclusion that Schrand told you on the stand that they have a rectangular firing impression that is consistent with a Mac 11. Dubose leaves with a Mac 11, ammunition found at the scene that matches the Mac 11. Salaam leaves with a 9mm. There was evidence that a 9mm was used at the offense. Not just the 9mm possessed by the victim, but Schrand told you there was ammunition of three guns involved in this offense. So take out the one to the victim and you still have two left, and evidence of another 9mm.

(Doc. 7, Tr. 1135-36).

violation of the Due Process Clause of the Fourteenth Amendment.[6]  (Doc. 1, p. 5).  In Ground

Four, petitioner alleges the ineffective assistance of appellate counsel based on counsel's failure

to raise the due process claim raised in Ground One.  *Id.* at 8.

In recognition of the equal obligation of the state courts to protect the constitutional rights

of criminal defendants, and in order to prevent needless friction between the state and federal

courts, a state defendant with federal constitutional claims must first fairly present those claims

to the state courts for consideration before raising them in a federal habeas corpus action.  *See* 28

U.S.C. § 2254(b)(1)(c).  *See also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard*

*v. Connor*, 404 U.S. 270, 275-76 (1971).  A constitutional claim for relief must be presented to

the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy*

*v. Marshall*, 757 F.2d 94, 99-100 (6th Cir. 1985).  If the petitioner fails to do so, he may have

waived the unraised claims for purposes of federal habeas corpus review.  *See Weaver v. Foltz,*

888 F.2d 1097, 1099 (6th Cir. 1989).

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner can demonstrate cause for the
> default, and actual prejudice as a result of the alleged violation of federal law, or
> demonstrate that failure to consider the claims will result in a fundamental
> miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner

files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state

---

[6]  Though petitioner does not specify how his conviction is "contrary to . . . his absolute right to procedural due process of law" in the instant petition, he does indicate that he raised the claim in his 26(B) application to reopen his appeal.  (Doc. 1, p. 5).  In that application, petitioner argued that his conviction violated the Due Process Clause of the Fourteenth Amendment because his convictions were based on a double inference.  (Doc. 7, Ex. 28).  This claim is the basis of petitioner's ineffective assistance of appellate counsel claim, raised as Ground Four in the instant

appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or

if he fails to comply with a state procedural rule that required him to have done something at trial

to preserve his claimed error for appellate review, *e.g.*, to make a contemporaneous objection, or

file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982);

*Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).

Federal courts may not consider "contentions of federal law that are not resolved on the

merits in the state proceeding due to petitioner's failure to raise them as required by state

procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). If petitioner fails to fairly present his

claims through the requisite levels of state appellate review to the state's highest court, or

commits some other procedural default to preclude review of the merits of petitioner's claims by

the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile

for petitioner to continue to pursue his claims in the state courts, the claims are subject to

dismissal with prejudice as waived. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489

U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985). *See also Weaver,*

888 F.2d at 1099. The Sixth Circuit applies a four-part test to determine if a claim is

procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable
> to the petitioner's claim and that the petitioner failed to comply with the rule; (2)
> the court must determine whether the state courts actually enforced the state
> procedural sanction; (3) it must be decided whether the state procedural forfeiture
> is an adequate and independent state ground upon which the state can rely to
> foreclose review of a federal constitutional claim; and (4) if the court has
> determined that a state procedural rule was not complied with and that the rule
> was an adequate and independent state ground, then the petitioner is required to
> demonstrate that there was cause for him not to follow the procedural rule and
> that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138

petition and discussed *infra*, pp. 22-24.

(6th Cir. 1986)). A state ground is "adequate and independent" if it is "firmly established and regularly followed." *Rideau v. Russell*, 342 F. App'x 998, 1002 (6th Cir. 2009) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).

In determining whether a state court rested its holding on a procedural default so as to bar federal habeas review, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991)). Normally, a federal habeas court will find that a petitioner procedurally defaulted if the last state court rendering a decision makes a plain statement to that effect. *Harris,* 489 U.S. at 261. No such statement is necessary, however, if the petitioner failed to present the relevant issues to the state court. *Id.* at 263 n.9. *See also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). In that event, the federal habeas court may hold the claim procedurally defaulted "if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9. Where the last reasoned opinion addressing a claim explicitly relies on a procedural default, it is presumed that the last state court judgment summarily dismissing that claim likewise relied on the procedural bar. *Ylst,* 501 U.S. at 803 (1991); *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *Rust*, 17 F.3d at 161; *Simpson*, 94 F.3d at 203.

If, because of a procedural default, a petitioner can no longer present his claims to a state court, he has waived them unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750. *See also*

*Murray v. Carrier,* 477 U.S. 478, 495 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Sykes,* 433 U.S. at 87.

"'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (quoting *Murray,* 477 U.S. at 488). "Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing that a factual or legal basis for a claim was not previously available." *Wilson v. Hurley,* 382 F. App'x 471, 478 (6th Cir. 2010) (citing *McClesky v. Zant*, 499 U.S. 467, 493-94 (1991)).

In the instant case, petitioner failed to raise the due process claim alleged in Ground One on direct appeal to the Ohio Court of Appeals or the Ohio Supreme Court. (*See* Doc. 7, Ex. 13, 17). Thus, petitioner procedurally defaulted this ground for relief. Ohio law provides that an issue not raised on direct appeal is barred by the doctrine of *res judicata. See State v. Perry*, 226 N.E.2d 104, 105-06 (Ohio 1967) (syllabus); *State v. Combs*, 652 N.E.2d 205, 209 (Ohio App. 1 Dist. 1994) (holding that *res judicata* stops post-conviction relief for claims that could have been raised on direct appeal). The Sixth Circuit Court of Appeals has consistently recognized that under Ohio law an issue that is not raised by a petitioner on direct appeal is subsequently barred from review based on the doctrine of *res judicata*.[7]

While petitioner raised the underlying due process claim in connection with his Rule

---

[7] *See, e.g., Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998) (recognizing procedural default of a claim in habeas petition where appellant never raised the claim on direct appeal to the Ohio Court of Appeals and the Ohio Supreme Court); *Rust*, 17 F.3d at 160-61 (finding adequate and independent state procedural rule where new claims raised in his second motion for leave to file a delayed direct appeal were barred by the Ohio Court of Appeals as *res judicata* because the petitioner had an opportunity to raise constitutional claims during the delayed direct appeal but failed to do so); *Leroy*, 151 F.2d at 100 (holding as adequate and independent state grounds the procedural default of claims raised for the first time in a petition for writ of habeas corpus on the basis of *res judicata* where petitioner failed to raise those claims in his direct appeal to the Ohio Court of Appeals and to the Ohio Supreme Court).

26(B) application to reopen his direct appeal by asserting that appellate counsel was ineffective for failing to bring the claim as an assignment of error, his Rule 26(B) application did not preserve the merits of that claim for habeas review. *See Davie v. Mitchell,* 547 F.3d 297, 312 (6th Cir. 2008). "[B]ringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'" *Id.* at 312 (quoting *White v. Mitchell,* 431 F.3d 517, 526 (6th Cir. 2005)). Consequently, by failing to raise the due process claim on direct appeal to the state courts, petitioner has waived the claim absent a showing of cause for his default and actual prejudice as a result of the alleged errors, or that the failure to consider the claim will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750. *See also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

As cause for the default, petitioner has argued that his appellate counsel was ineffective for failing to raise the claim on direct appeal, as is argued in Ground Four of the petition. Thus, in order to determine whether petitioner has demonstrated cause to overcome the procedural default of Ground One, the Court must evaluate the merits of petitioner's ineffective assistance of appellate counsel claim, as raised in Ground Four.[8]

In Ground Four, petitioner claims that his appellate counsel was ineffective for failing to argue that his murder conviction "is violative of the 14th Amendment to the U.S. Constitution and the Double Inference Rule." (Doc. 1, p. 9). Petitioner raised this argument in his application to reopen his appeal, where he argued that because there was no evidence demonstrating who the

---

[8] Ineffective assistance of counsel can provide cause for a procedural default unless the ineffective assistance of appellate counsel claim was itself procedurally defaulted. *See Murray,* 477 U.S. at 488-89. *See also Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *Burroughs v. Makowski,* 411 F.3d 665, 668 (6th Cir. 2005). In order for the ineffective assistance of appellate counsel to serve as cause to excuse a procedural default, petitioner must show that his appellate counsel's failure to raise the claim rose to the level of a constitutional violation under *Strickland v. Washington,* 466 U.S. 668 (1984). *McFarland v. Yukins,* 356 F.3d 688, 699 (6th Cir. 2004). In evaluating the ineffective assistance of appellate counsel claim, the Court must assess the strength of the claims that appellate

actual killer was, that the jury had found that he knowingly caused Sanders' death based on a double inference.[9] (Doc. 7, Ex. 28, pp. 4-5).

The Ohio Court of Appeals found that appellate counsel was not ineffective for failing to raise the claim on appeal:

> Dubose also contends that his appellate counsel was ineffective in failing to present an assignment of error challenging his murder conviction on the ground that the jury had improperly found that he had acted "knowingly" based on a "double inference." But Dubose's appellate counsel did assign as error the sufficiency of the evidence to support Dubose's murder conviction. And we overruled the assignment of error because the evidence showed that Dubose and a co-indictee had both shot at the victim with guns that they had brought to a drug transaction with the victim. Dubose's proposed "double inference" argument would not have led us to a contrary conclusion. Thus, we cannot say that appellate counsel was deficient in failing to advance this argument on appeal.

(Doc. 7, Ex. 30, p. 2).

The Ohio Court of Appeals correctly identified *Strickland* as the controlling Supreme Court precedent and reasonably determined that petitioner's ineffective assistance of counsel claim was without merit. Under the prejudice prong of the *Strickland* analysis, petitioner must show "a reasonable probability that, but for his counsel's unprofessional errors, the result of the criminal proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *Harrington,* 131 S.Ct. at 787 (citing *Strickland,* 466 U.S. at 694).

In this case, as the appellate court reasoned and is detailed above, sufficient evidence was offered for the jury to find beyond a reasonable doubt that petitioner was armed, that he shot at Mr. Sanders, and that Mr. Sanders was killed as a proximate result of the felonious assault. In

---

counsel failed to raise. *See Wilson v. Parker,* 515 F.3d 682, 707 (6th Cir. 2008).

[9] In his application to reopen, petitioner argued that "no evidence was adduced to prove who the actual killer was. On this basis then the trier of fact had to 'infer' that the unknown killer 'knowing[ly]' caused the death of Sanders and that Appellant had 'aided and abetted' such killing. As a result, once the trier of fact inferred that the unknown killer knowingly caused the death of Sanders as a proximate result of committing felonious assault, the trier of fact

addition, as respondent has argued in the return of writ (*see* Doc. 7, p. 22), the state was not required to offer proof that petitioner knowingly caused the death of Mr. Sanders under Ohio's felony murder statute. *See State v. Fry*, 926 N.E.2d 1239, 1253 ("R.C. 2903.02(B), the felony-murder statute, does not contain a *mens rea* component") (citing *State v. Miller*, 775 N.E.2d 498, 504 (Ohio 2002)). The state was only required to demonstrate that that he knowingly caused or attempted to cause physical harm through the use of a deadly weapon. *Id.* ("a person commits felony murder pursuant to R.C. 2903.02(B) by proximately causing another's death while possessing the *mens rea* element set forth in the underlying felony offense"). Based on the testimony summarized above, the Court finds that the Ohio Court of Appeals reasonably determined that petitioner's double inference claim would not have altered the outcome of his appeal and that his ineffective assistance of appellate counsel claim was therefore without merit. Accordingly, the Court finds that petitioner is not entitled to habeas relief based on Ground Four of his petition.

In addition, petitioner cannot rely on the ineffective assistance of appellate counsel claim, which the Court has found to be without merit, as "cause" to overcome his procedural default of the underlying claim asserted in Ground One. Petitioner has neither argued nor demonstrated that a fundamental miscarriage of justice will occur if his procedurally-defaulted claim for relief is not considered or, in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96. *See also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d at 498. [10] Accordingly, petitioner is not entitled to relief based on Grounds One and Four of the petition.

---

inferred that Appellant knowingly caused the death of Sanders." (Doc. 7, Ex. 28, p. 4).

[10] To establish a credible claim of actual innocence sufficient to excuse his procedural defaults, petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,*

**C. Petitioner is not entitled to relief based on Ground Three of the petition because it is without merit.**

The Court finds that Ground Three is also without merit. In Ground Three, petitioner contends that his appellate counsel was ineffective for failing to argue that his conviction violates the Equal Protection Clause of the Fourteenth Amendment on direct appeal. (Doc. 1, p. 8). Petitioner asserts that murder, under Ohio Rev. Code § 2903.02(B), prohibits identical activity and requires identical proof, yet imposes a harsher sentence than involuntary manslaughter under Ohio Rev. Code § 2903.04. (*See* Doc. 7, Ex. 28, p. 2).

The Ohio Court of Appeals addressed petitioner's ineffective assistance of appellate counsel claim on the merits and determined that counsel was not deficient for failing to raise the alleged error on appeal:

> An application to reopen an appeal must be granted if the applicant establishes "a genuine issue as to whether he has a 'colorable claim' of ineffective assistance of counsel on appeal." The United States Supreme Court's decision in *Strickland v. Washington* provides the standard for determining whether the applicant was denied the effective assistance of appellate counsel. The applicant must prove "that his counsel [was] deficient for failing to raise the issues he now presents and that there was a reasonable probability of success had [counsel] presented those claims on appeal."
>
> In his application, Dubose contends that he was denied the effective assistance of counsel, when his appellate counsel failed to present an assignment of error challenging his murder conviction under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. He argues that his conviction for felony murder under R.C. 2903.02(B), rather than involuntary manslaughter under R.C. 2903.04, denied him equal protection of the law, because the statutes prohibit identical conduct and require identical proof, but the felony-murder statute provides a greater penalty. But the statutes do not prohibit identical conduct or require identical proof. Therefore we cannot say that

---

513 U.S. at 324. Petitioner's habeas petition focuses solely on his constitutional claims and does not include any additional evidence not presented at trial. (*See* Doc. 1). Accordingly, the Court is unable to reach the merits of his procedurally defaulted claim. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup,* 513 U.S. at 316. Therefore, petitioner has not demonstrated that his procedural default should be excused under the "fundamental miscarriage of justice" exception.

appellate counsel was deficient in failing to advance this equal protection argument on appeal.

(Doc. 7, Ex. 30, pp. 1-2) (internal citations and footnotes omitted).

Upon review of the entire record, this Court concludes that petitioner has failed to demonstrate that the Ohio appellate court's decision is contrary to or an unreasonable application of Supreme Court precedent as to justify federal habeas corpus relief. The appellate court correctly identified *Strickland* as the controlling Supreme Court precedent and reasonably determined that the underlying equal protection claim was without merit. In reaching this decision the Ohio Court of Appeals cited to *State v. Wilson*, 388 N.E.2d 745, 748 (1979), an Ohio Supreme Court case holding that where statutes "prohibit identical activity, require identical proof, and yet impose different penalties, then sentencing a person under the statute with the higher penalty violates the Equal Protection Clause." *See also United States v. Batchelder*, 442 U.S. 114 (1979). The appellate court correctly determined that the involuntary manslaughter and felony murder statutes do not involve identical conduct or proof, citing to several Ohio appellate court decisions rejecting the same argument. (*See* Doc. 7, Ex. 30, p. 2. n.6). Because the Ohio Court of Appeals reasonably determined that the underlying equal protection claim was without merit, the court was also reasonable in determining that appellate counsel was not ineffective for failing to raise the meritless claim. *See Davie*, 547 F.3d at 312 ("if the underlying substantive claims have no merit, the applicant cannot demonstrate that counsel was ineffective for failing to raise those claims on appeal"); *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) ("appellate counsel cannot be ineffective for failure to raise an issue that lacks merit") (citation omitted).

The Court finds that petitioner has not demonstrated that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of the *Strickland* standard. Therefore, petitioner is not entitled to relief based on Ground Three of the petition.

Accordingly, in sum, the Court finds that petitioner procedurally defaulted the due process claim asserted in Ground One and that the claims raised in Grounds Two, Three, and Four or the petition are without merit. Therefore, it is **RECOMMENDED** that petitioner's petition for writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claim alleged in Ground One of the petition, which this Court has concluded is waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[11] In addition, a certificate of appealability should not issue with respect to the remaining claims addressed on the merits herein in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,*

---

[11] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in

the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

   s/ Stephanie K. Bowman_____
Stephanie K. Bowman
United States Magistrate Judge

Rh

---

the defaulted grounds for relief. *See Slack,* 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

IMMANUEL DUBOSE,                     Case No. 1:10-cv-428
      Petitioner,

                                       Beckwith, J.
      vs.                                Bowman, M.J.

WARDEN, LEBANON                **NOTICE**
CORRECTIONAL INSTITUTION,
      Respondent.


Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).